## PATTON v. WILLIAMS et al.

### Civil Action No. 847.

District Court, E. D. Oklahoma.

Nov. 26, 1943.

Frye & Patterson (Roy Frye and Amelia Patterson) and Wall & Green (W. B. Wall and J. Fred Green), all of Sallisaw, Okl., for plaintiff.

Joseph R. Brown, of Fort Smith, Ark., for defendants.

RICE, District Judge.

Plaintiff filed his complaint herein against the defendants on July 13, 1942. Plaintiff bases his suit upon the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U. S.C.A. § 201 et seq. Plaintiff is a resident of the State of Oklahoma. The individual defendants composing the partnership are residents of Fort Smith, Arkansas, but the partnership is engaged in the business of operating the Fort Smith Stockyards at Moffett, in Sequoyah County, Oklahoma. The plaintiff alleges that the stockyards company is engaged in interstate commerce. The defendant, at a pre-trial conference, admitted that the company was so engaged.

The defendants were, at all times mentioned in the petition, engaged in the business of buying and receiving livestock for sale in interstate commerce. The livestock were purchased at the stockyards of the defendant at Moffett, Oklahoma, and shipped to various points from said stockyards outside of and beyond the boundaries of Oklahoma. Livestock were also received in said stockyards from points outside of

and beyond the boundaries of Oklahoma.

In the operation of the stockyards, there was a yard foreman in charge of the buying, receiving and shipping for sale at other places outside the state of Oklahoma. His duties consisted of managing the actual operation of the stockyards.

The plaintiff was employed as bookkeeper in the office of the stockyards company at Moffett, Oklahoma. It was his business to keep the books, reflecting the transactions had in the stockyards. It was plaintiff's business to keep the record of the time worked by the various employees of the stockyards. One assistant worked with and aided the plaintiff in the keeping of these books. The plaintiff made up the payroll for the various employees, including himself, and wrote the checks for the payment of the various employees, which checks were signed by the plaintiff and countersigned by either the manager of the stockyards or one of the partners. There is some dispute as to whether or not the plaintiff could hire or fire his assistant. I do not deem it important whether he could or could not.

The members of the partnership maintained an office at Moffett, Oklahoma.

The evidence does not disclose that there was any requirement that the plaintiff work any particular number of hours. He seems to have been left free to do his work his own way. He was not required to report at any given hour in the morning, although the evidence discloses that he usually reported about 8:00 or 8:30 A.M. He did not have any definite time for leaving the office.

The plaintiff was employed by the defendants prior to the effective date of the Wages and Hour Law, at a salary of $150 per month. It is his contention that prior to the effective date of the Wages and Hour Law he had a conference with his employers in which they agreed to continue to pay him $150 per month and "take care of him as to overtime." On the other hand, it is the contention of the defendants that prior to the effective date of the Act it was agreed between the plaintiff and the defendant that he would be employed at the basic wage of 50¢ per hour, with time and one half for overtime, and with a guarantee of a minimum of $150 per month. In the event his wages, figured on the basis of 50¢ per hour with time and one-half for overtime exceeded $150 per month, defendants were to pay the excess—but in no

event was plaintiff to be paid less than $150 per month.

The plaintiff kept no daily record for the company of the number of hours that he worked each day. At the end of each month he wrote a check payable to himself, signed by himself, and countersigned by either the manager of the stockyards or a member of the partnership, and drew $150 per month. After the effective date of the Wages and Hour Law, the plaintiff testified that he kept a record of the number of hours that he worked each day. This record was kept on a small calendar, approximately three by four inches in size, or in a small vest-pocket notebook. According to this record, he worked in excess of forty or forty-four hours per week. According to this calendar and notebook, produced in open court, the plaintiff worked on holidays and other days when he was away from the business, although at the time of trial the plaintiff admitted that he actually did no work on those days. The plaintiff kept a record for the company of the number of hours worked by each employee except himself. The company has no record of the number of hours each day or week that the plaintiff actually worked. Plaintiff, while in the employ of defendants, never made any claim for overtime pay.

At some time during the course of his employment the plaintiff overpaid himself the sum of $960. This was done by writing checks, signing his name to the checks, and having them countersigned by the manager of the yards. When this was ascertained by the defendants, at a conference between the plaintiff and the defendants, the plaintiff agreed to repay this sum of money. He made no contention at that time that he was entitled to additional compensation by reason of overtime. Plaintiff executed a note for this amount to a bank at Fort Smith, Arkansas, which note was endorsed by defendants. He paid $20 per month on this note for eight months. Defendants subsequently paid the balance and now hold the note. Plaintiff admits the balance is due.

The plaintiff makes no claim for overtime after December, 1941. He says that his health was poor and that he didn't work any overtime. The evidence, however, discloses that there was as much work in the office in 1942 as there had been in prior years, and that the plaintiff had no more help than he had formerly had in the keeping of the books, and that he did the work

886

that was required without working overtime.

The plaintiff's evidence as to the terms of his employment after the effective date of the Wages and Hour Act is contradicted by the evidence of the two partners and one other person, an employee of the defendants. The evidence of two partners and the one employee sustain the contention of defendants as to the terms of plaintiff's employment.

Under all of the evidence, I make the following findings of fact on the two controverted issues:

The terms of employment of the plaintiff after the effective date of the Act were as contended for by the defendants.

The plaintiff has worked no overtime for which he has not been paid.

Conclusions of Law

(1) The defendants are and were engaged in interstate commerce.

(2) The plaintiff was not a bona fide executive as contended for by the defendants.

(3) The burden of proof was upon the plaintiff to establish by a preponderance of the evidence the terms of his employment and the amount of overtime, if any, that he worked, and that he had not been paid for this overtime. The plaintiff failed to sustain the burden of proof and is not entitled to recover.

The defendant will prepare a proper form of decree and submit to the Court for entering on the 6th day of December, 1943. Judgment should be for the defendants and against the plaintiff for the balance admitted to be due on the note.